IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

CASE NO. 3:25-cv-354

| | |
|---|---|
| THE ROOF DEPOT, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| HOUSTON CASUALTY COMPANY, | ) ) |
| Defendant. | ) ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff The Roof Depot, LLC ("Roof Depot"), by and through its undersigned counsel, hereby submits this Complaint for Declaratory Judgment against Houston Casualty Company ("HCC"), and alleges as follows:

### PARTIES AND JURISDICTION

1. Plaintiff Roof Depot is a Georgia limited liability company with its principal place of business located at 705 Hembree Place, Roswell, GA, 30076.

2. Roof Depot's citizenship is attributable to its members who are citizens of Georgia, Massachusetts, and Delaware.

3. Defendant HCC is a foreign insurance company, licensed to do business in North Carolina.

4. HCC is a citizen of the State of Texas. HCC is domiciled in Texas with its principal place of business located at 13403 Northwest Freeway, Houston, Texas, 77040.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 2201 because: (i) there is an actual controversy between the parties; (ii) the amount in controversy exceeds $75,000, exclusive of interest and costs; and (iii) the matter is between citizens of different states.

6. This Court has personal jurisdiction over the Defendant because: (i) it is an insurance company licensed and authorized to conduct business in North Carolina; (ii) the Defendant conducts business in North Carolina; and (iii) the Defendant issued the relevant insurance policy giving rise to this insurance coverage action to insure a project-specific risk for a construction project located in North Carolia.

7. Venue in this district is proper pursuant to 28 U.S.C. § 1391, as the loss which gave rise to this insurance coverage action occurred in Charlotte, North Carolina, which is situated in the Western District of North Carolina.

8. All conditions precedent to this action have occurred, been performed, or have otherwise been waived.

## FACTUAL BACKGROUND

### The Project and Policy

9. Morgan Bond Charlotte, LLC entered into a written agreement with Samet Corporation ("Samet") for the construction of Inspire SouthPark Apartments, a 269-unit multifamily residential building located at 345 Sharon Township Lane, Charlotte, North Carolina (the "Project").

10. On or about October 11, 2016, Samet subcontracted with The Roof Depot, Inc. to perform certain roofing work for the Project.

11. On or about April 8, 2022, The Roof Depot, Inc. merged with TRD TempCo, LLC, a Georgia limited liability company.

12. As part of the merger, TRD TempCo, LLC changed its name to The Roof Depot, LLC, and The Roof Depot, Inc. ceased to exist as an operating concern.

13. Roof Depot is the successor in interest of The Roof Depot, Inc., for all relevant assets and liabilities, including the interest in the insurance policies purchased by or otherwise affording coverage to The Roof Depot, Inc. for various construction projects.

14. The Project was and is covered by an Owner-Controlled Insurance Program ("OCIP") issued by HCC under Policy No. H16PC30624-00, with a policy period from March 1, 2016 to September 1, 2018 ("the Policy"). A copy of the Policy is attached as **Exhibit A**.

15. The purpose of the OCIP is, in part, to provide uniform liability insurance for all eligible participants of the Project, including the owner, general contractor, and subcontractors, to replace the insurance otherwise carried by those participants, and to eliminate disputes between contractors and subcontractors about liability for a loss since all are covered under the same insurance policy.

16. Specifically, pursuant to the OCIP Manual, the purpose of the OCIP "is to provide a consolidated insurance program to help protect all Enrolled Parties against injuries and liabilities arising out of Work at the Jobsite". A copy of the OCIP Manual is attached as **Exhibit B**.

17. The Policy identifies Morgan Bond Charlotte, LLC as the Named Insured.

18. The Policy recognizes a distinction between a Named Insured and other covered persons or organizations:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.
>
> The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

19. Thus, the Policy expressly contemplates that a person or organization may qualify for coverage under the Policy by being either a Named Insured or by meeting the definition of "insured" under Section II – Who Is An Insured.

20. Roof Depot is an "insured" under the terms of the Policy.

21. The Policy is endorsed with a Named Insured Endorsement which provides that contractors and subcontractors may qualify as a Named Insured when "the First Named Insured has agreed by contract with the project General Contractor to furnish the insurance coverage provided under this policy."

22. The Named Insured Endorsement is not the sole mechanism through which contractors and subcontractors may qualify for insurance under the Policy.

23. Section II of the Policy includes a Project-specific modification to include "enrolled contractors" as insureds:

> 9. "Enrolled Contractors", mean contractors who, prior to the commencement of their work on the covered project, have completed the appropriate enrollments documents for the "covered project". "Enrolled contractors" do not include any manufacturers or suppliers of materials or contractors or subcontractors engaged in any environmental or geotechnical work or any professionals, or surveyors unless their names are listed in the Schedule of this endorsement. "Enrolled contractors" includes substitute contractor to be enrolled within 10 days of such work.

4

24. Thus, a party may have insured status under the Policy by virtue of being an "enrolled contractor," regardless of whether that party may otherwise qualify as a Named Insured through the Named Insured Endorsement.

25. The Policy includes an exclusion titled Wrap-Up Cross Suits with Exception for the Project Owner (the "Cross Suits Exclusion") which states:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - WRAP-UP CROSS SUITS WITH EXCEPTION FOR THE PROJECT OWNER

This endorsement modifies insurance under the following:

**COMMERCIAL GENERAL LIABILTY COVERAGE PART**

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below:

The following exclusion is added to Paragraph **2., Exclusions** of **SECTION 1 – COVERAGES A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and Paragraph **2., Exclusions** of **SECTION 1 – COVERAGE B – PERSONAL AND ADVERTISING INJURY:**

This insurance does not apply to:

"Property damage" arising from claims or "suits" brought by any Named Insured identified in the declarations or policy as a Named Insured against any other Named Insured identified in the declarations or policy as a Named Insured. This exclusion does not apply to the Project Owner.

26. Per its terms, the Cross Suits Exclusion only applies to claims or suits between Named Insureds that are "identified in the declarations or policy as a Named Insured."

27. The Cross Suits Exclusion is purposefully designed to limit its application to those Named Insureds who are "identified," i.e., named, in the Policy.

28. This limitation is consistent with the OCIP's purpose to "protect all Enrolled Parties against injuries and liabilities arising out of Work at the Jobsite."

29. Additionally, the limitation is consistent with the Policy's intent which expressly contemplates that insurance will apply to both Named Insureds and other covered organizations, and will do so separately:

> **7. Separation Of Insureds**
>
> Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:
>
> a. As if each Named Insured were the only Named Insured; and
>
> b. Separately to each insured against whom claim is made or "suit" is brought.

30. By its own terms, the Cross Suits Exclusion does not apply to claims asserted by the Owner against a Named Insured, to claims between non-identified Named Insureds, or to claims against "enrolled contractors."

31. These limitations in the Cross Suits Exclusion are designed to allow the policy to respond to claims made by the Owner for damage to its property caused by any of the enrolled parties.

## The Claims and HCC's Denial of Coverage

32. The Project achieved substantial completion on or about August 2, 2018, as indicated by the Certificate of Occupancy.

33. On August 2, 2023, Northland Inspire, LLC, the property owner ("Owner"), filed a lawsuit against Samet in Mecklenburg County Superior Court, alleging property damage caused by defects in the construction of the property, including property damage allegedly caused by defects in the roof parapets and waterproofing systems (the "Northland Inspire Lawsuit").

34. Upon information and belief, HCC is defending Samet under a reservation of rights to withdraw its defense and to deny coverage based on various theories and potential exclusions, all of which lack legal and factual merit.

35. HCC's failure to fully acknowledge its coverage obligations to Samet and to provide Samet with an unqualified defense has exposed Roof Depot to claims being asserted against it.

36. On May 24, 2024, Samet sent a demand letter to Roof Depot in which Samet referenced the Northland Inspire Lawsuit and stated "the alleged damages and repairs may implicate the work which was performed, at least in part, by your company. . . the time is approaching to where your company . . . will need to be added to the lawsuit unless we are able to reach some [ ] global resolution" (the "Samet Demand Letter").

37. Roof Depot promptly furnished the Samet Demand Letter to HCC and tendered its defense and indemnification obligations to HCC under the OCIP.

38. On August 20, 2024, HCC issued a prospective disclaimer of coverage stating that if Samet were to file a third-party complaint against Roof Depot, HCC would not defend or indemnify Roof Depot because of the Cross Suits Exclusion.

39. As a result of HCC's refusal to accept its obligation to indemnify the Owner for the losses identified in the Northland Inspire Lawsuit, on June 17, 2024, Samet filed a Third-Party Complaint against certain subcontractors, not including Roof Depot. A copy of the Third-Party Complaint is attached hereto as **Exhibit C**.

40. As a result of HCC's refusal to accept its obligation to indemnify the Owner for the losses identified in the Northland Inspire Lawsuit, on November 22, 2024, Samet filed an Amended Third-Party Complaint which added in additional subcontractors and sureties, including The Roof Depot, Inc. and Roof Depot, thereby formally bringing Roof Depot into the Northland Inspire Lawsuit as a third-party defendant. A copy of the Amended Third-Party Complaint is attached hereto as **Exhibit D**.

41. HCC's refusal to accept its defense and indemnity obligations in the main action between the Owner and Samet caused the Amended Third-Party Complaint to be filed against Roof Depot.

42. On January 15, 2025, Roof Depot sent a response to HCC's Disclaimer of Coverage and requested that HCC reconsider its position and provide coverage and defense to Roof Depot under the Policy (the "Response to Disclaimer").

43. On April 14, 2025, HCC issued a second disclaimer of coverage letter, maintaining its denial of coverage based on the Cross Suits Exclusion.

44. HCC's denial is based upon a flawed interpretation of the Policy, including but not limited to the Cross Suits Exclusion.

45. Specifically, HCC incorrectly concludes that because Roof Depot qualifies as a Named Insured pursuant to the Named Insured Endorsement, Roof Depot is "identified in the declarations or policy as a Named Insured."

46. Roof Depot is a Named Insured because the Owner "agreed by contract with [Samet] to furnish the insurance coverage provided under this policy" to Samet's subcontractors, which includes Roof Depot not by identification in the Policy but by virtue of Roof Depot's contractual relationship to Samet.

47. Roof Depot also qualifies as an "enrolled contractor" and therefore an "insured" pursuant to Section II – Who Is An Insured.

48. Further, the Cross Suits Exclusion cannot apply to claims asserted against Roof Depot in the Northland Inspire Lawsuit because Samet has not alleged its own separate damages; rather, the alleged property damage arises from the Owner's claim against Samet.

49. Additionally, application of the Cross-Suits Exclusion to Samet's third-party claim against Roof Depot would conflict with the Policy's Separation of Insureds provision.

50. Further, application of the Cross-Suits Exclusion to Samet's third-party claim against Roof Depot would render coverage under the Policy illusory.

51. Application of the Cross-Suits Exclusion to Samet's third-party claim against Roof Depot is also contrary to the Policy's additional insured provisions and coverage for claims arising under insured contracts.

52. Roof Depot has incurred attorney's fees and costs, including defense expenses, in connection with HCC's denial of coverage and in the prosecution of this action.

**COUNT ONE: DECLARATORY JUDGMENT - ENTITLEMENT TO COVERAGE**

53. Roof Depot repeats and re-alleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

54. The Policy issued by HCC provides coverage for property damage arising out of allegedly defective construction performed by Roof Depot.

55. The Cross Suits Exclusion does not apply to the claims asserted against Roof Depot in the Northland Inspire Lawsuit.

56. Roof Depot is entitled to defense and indemnification under the Policy for the Third-Party Complaint filed by Samet in connection with the claims made by Northland Inspire.

57. Despite being entitled to coverage under the Policy, HCC has denied coverage to Roof Depot.

58. A controversy exists between Roof Depot and HCC regarding the parties' rights and obligations under the Policy and said controversy relates to legal action now pending against Roof Depot.

## PRAYER FOR RELIEF

HCC's disclaimer of coverage is contrary to the terms of the Policy. Roof Depot seeks a declaratory judgment establishing that Roof Depot is entitled to the benefits of the Policy, including defense and indemnification against the claims in the Northland Inspire Lawsuit.

WHEREFORE, Roof Depot respectfully prays that the Court:

1. Declare that Roof Depot is entitled to defense and indemnification under the Policy issued by HCC;

2. Order that HCC is obligated to provide defense and indemnification to Roof Depot in connection with the third-party claims brought by Samet and any subsequent claims related to the Northland Inspire Lawsuit;

3. Award Roof Depot any other relief that the Court deems just and proper, including but not limited to costs of defense incurred prior to this action, any associated legal fees, and other relief available under the law; and

4. Award any and all other relief that the Court may deem just and proper.

This the 29th day of May, 2025.

**SAFRAN LAW OFFICES**

/s/ Brian J. Schoolman
Brian J. Schoolman, NCSB # 26266
120 South Boylan Avenue (27603)
Post Office Box 587
Raleigh, North Carolina 27602-0587
Phone: (919) 828-1396
Facsimile: (919) 828-7993
Email: bschoolman@safranlaw.com
*Attorneys for The Roof Depot, LLC*